IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

OCT 0 6 2000

CHARLES WAYNE BEWLEY     JAMES W. McCORMACK, PLAINTIFF
By:_____
                                                        DEP CLERK

V.                 CASE NO. 4:00CV00669GH

LAWRENCE JOHNSON, Individually
and in his Official Capacity as the Chief
of Police in and for the City of Little Rock,
Arkansas; CARLOS CORBIN, in his official
capacity as a Little Rock Police Officer; and the
CITY OF LITTLE ROCK, ARKANSAS                      DEFENDANTS

## MEMORANDUM BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION AND FACTUAL BACKGROUND

The Plaintiff, Lieutenant Charles Wayne Bewley ("Lieutenant Bewley" or "Plaintiff"), participated in the 2000 promotion process for the rank of captain in the Little Rock Police Department ("LRPD") and was included on a certified list for possible promotion on August 10, 2000. Separate Defendant, Little Rock Police Chief Lawrence Johnson ("Chief Johnson"), was presented with the list by the Little Rock Civil Service Commission ("the Commission") upon its certification. The list contained eight LRPD lieutenants, with the first three being David B. Ebinger, Caucasian male, Lieutenant Bewley, Caucasian male, and Captain Carlos A. Corbin, African American male. Pursuant to the authority granted to him by Arkansas civil service law, Chief Johnson selected Captains Ebinger and Corbin for promotion.

Lieutenant Bewley contends that Arkansas civil service law mandated that Chief Johnson promote him rather than Captain Corbin. Despite the fact that the statutory and case law is to the contrary, he maintains that Chief Johnson was bound to promote from the certified list strictly according to rank order.

Lieutenant Bewley also contends that Chief Johnson did not select him for promotion because of his race, Caucasian, thereby resulting in a denial of his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution. He argues that Chief Johnson was acting in accordance with a custom, policy or practice of the City of Little Rock ("City") to condone and encourage discrimination against white applicants for promotion in the LRPD. Lieutenant Bewley's constitutional claim is brought pursuant to 42 U.S.C. § 1983. The Defendants respectfully submit that the undisputed material facts support entry of summary judgment in their favor and the Complaint should be dismissed with prejudice.

## ARGUMENT

### A. Summary Judgment Standard.

A defending party in a lawsuit may move for summary judgment at any time during the proceedings. Fed. R. Civ. P. 56(b). Defendants recognize that, in a typical case, time for discovery is needed before a party moves for summary judgment. But, this is not a typical case. All of the body of evidence that could possibly be relevant to Plaintiff's lawsuit has been supplied by Defendants. There is no need for discovery.

Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the burden of showing the absence of a genuine issue of material fact. *Lynn v. Deaconess Medical Center - West Campus*, 160 F.3d 484 (8th Cir. 1998). Once a moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 576

(1986). A disputed fact is not material unless it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (1986).

### B. Arkansas Civil Service Law.

In addition to his federal constitutional claim, Lieutenant Bewley asks the Court to assert its supplemental jurisdiction over his state law claim. He contends that Chief Johnson was bound to select him for promotion over Captain Corbin because he was more qualified by virtue of being one spot ahead of Captain Corbin on the certified list. Lieutenant Bewley's position is contradictory to Arkansas statutory and case law on this subject.[1]

The statute at issue in this case is Ark. Code Ann. § 14-51-301 (Michie Supp. 1999). It contains provisions directing civil service commissions to adopt rules and regulations governing the fire and police departments of their respective cities. The Commission has promulgated rules and regulations pursuant to this statute.

One of the requirements of § 14-51-301 is that the Commission must adopt rules requiring the establishment of eligibility lists for promotion based upon open competitive examinations. § 14-51-301(9)(A)(i). Upon certification by the Commission, the list, which is effective for one year from the date of certification, is provided to the appropriate department head, in this case the police chief, who then has the discretion to select for promotion one of the three standing highest on the eligibility list for that rank. *See* § 14-51-301(b)(6). There is absolutely no requirement that the chief go down the list in rank order in making his promotions. This point was affirmed by the Arkansas Supreme Court in *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997).

---

[1] Defendants recognize that the Court may decline to assert its supplemental jurisdiction if it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); and *Labickas v. Arkansas State University*, 78 F.3d 333 (8th Cir. 1996). However, the state law claim is so clearly without merit that Defendants respectfully submit it is subject to summary dismissal.

In *Burcham*, the police officer plaintiff contended that, if three promotions were to be made in one year, the first three people on the list must be selected. Under his interpretation, the second time a position became available for promotion, only two names would be submitted and the third time only one name would be submitted. This assured that the third person on the list would be selected for promotion. The Arkansas Supreme Court noted that the plaintiff would have been right under the former civil service law. The Court stated that prior to 1987, "the civil service statute contained language suggesting that promotion be afforded to the one standing highest on the eligibility list." *Id.* at 268. However, the language was amended in 1987 to provide that the department head could select for promotion from among the three standing highest on the certified list. The Court stated:

> ... Subsection (b)(6) makes it clear that when the names of the three standing highest are submitted, the department head is to *choose one of the three*. To limit the police chief to one name in making his selection would run counter to the express language of the statute. In fact, in 1987, the General Assembly deleted language in § 14-51-301(b)(6), requiring promotion of the one standing highest on the eligibility list. *See* Act 657 of 1987. (emphasis in original). 954 S.W.2d at 269.

The Court also noted that to read the statute otherwise would deprive department heads "of any discretion in choosing the best candidate," which was not the intent of the General Assembly. *Id.* at 269. Clearly, the Supreme Court understood the intention of the legislature as contained in the plain words of the statute - the three candidates available for promotion are all qualified and the chief can select any one of the three.

In interpreting a state statute, a federal court is bound by the construction given the statute by the highest court within the state. *Slaten v. Cliff's Drilling Company*, 748 F.2d 1275, 1277 (8th Cir. 1984). In this instance, the Arkansas Supreme Court has clearly and correctly interpreted § 14-

51-301 with respect to promotions in the LRPD. In doing so, the court had little trouble reading the plain meaning of the statute. The Defendants respectfully submit that Lieutenant Bewley's state law claim is without merit and should be dismissed with prejudice.

### C. **Equal Protection.**

#### 1. **Claims Against City and Defendants in Official Capacity.**

Lieutenant Bewley has sued Chief Johnson, both individually and in his official capacity as Chief of Police, Captain Corbin in his official capacity and the City of Little Rock pursuant to 42 U.S.C. § 1983. This is the vehicle through which he asserts his denial of equal protection claim. The suit against Chief Johnson and Captain Corbin in their official capacities is tantamount to a suit against the City. *Kentucky v. Graham*, 473 U.S. 159 (1985) and *Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998).

A municipality may be sued directly as a person under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Supreme Court jurisprudence has clearly established that a plaintiff, seeking to impose liability on a municipality under § 1983, must identify a custom or policy that caused the plaintiff's injury. *Board of Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may establish municipal liability under § 1983 by proving that his constitutional rights were violated by actions pursuant to official municipal policy, or misconduct so pervasive among non-policymaking employees of the municipality so as to constitute a custom or usage with the force of law. *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 905 (8th Cir. 1999) and *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell*). This ensures that "a municipality is held liable only for those deprivations

resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." *Brown*, at 1388. The Court also noted:

> ... [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the required degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. (emphasis in original) 117 S. Ct. at 1388.

Although municipal liability for violating constitutional rights may arise from a single act of a policy maker, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986), that act must come from one in an authoritative policy making position and represent the official policy of the municipality. When an official's discretionary decisions "are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the acts of the municipality." *City of St. Louis v. Proprotnik*, 485 U.S. 112, 127 (1988). Municipalities may be held liable for acts which "the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480.

In this case, the City has long maintained a strong policy of equal employment opportunity in all employment practices, including promotions. The City specifically prohibits an individual's race from being considered in determining promotions. This policy is reaffirmed in the Commission's rules and regulations. Thus, even if Lieutenant Bewley suffered a constitutional deprivation, it was *not* the result of an unconstitutional policy of the City.

So, to state a constitutional claim, Lieutenant Bewley must prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Adickes v. S.*

*H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). Lieutenant Bewley alleges that Chief Johnson's decision to promote Captain Corbin was "part and parcel of a pattern, practice and custom of the City which condones and encourages discrimination against white applicants for promotion" in the LRPD. *See* Compl. ¶13. However, he also admits that the relevant time period, for purposes of this lawsuit, is during Chief Johnson's tenure as the LRPD Chief of Police. *See* Compl. ¶4.

The Eighth Circuit has set forth the following elements of a custom or practice claim: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entities' employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entities' policy making officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entities' custom, i.e., that the custom was a moving force behind the constitutional violation. *Ryan v. Board of Police Commissioners*, 96 F.3d 1076, 1084 (8th Cir. 1996). A pattern or practice of intentional discrimination is present "when discriminatory acts were not isolated, insignificant, or sporadic, but were repeated, routine, or of a generalized nature; in other words, discrimination must have been 'the company's standard operation - the regular rather than the unusual practice." *Catlett v. Missouri Highway & Transportation Commission*, 828 F.2d 1260, 1265 (8th Cir. 1987).

The ultimate burden shouldered by Lieutenant Bewley in establishing a pattern and practice of discrimination is to prove intent on the part of the City to discriminate against him. A claim under § 1983 alleging racial discrimination must allege purposeful discrimination. *Personnel Administrator of Massachusetts v. Feeney*, 442 U. S. 256, 272, 279 (1979). In *Feeney* the Court said that discriminatory purpose "implies more than intent as volition or intent as awareness of consequences." It implies that the decisionmaker "selected or reaffirmed a particular course of

action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279.

The burden of proving intentional racial discrimination under § 1983 is the same as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991. *Richmond v. Board of Regents of University of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992). Absent direct evidence of discrimination, which is not present in this case, Lieutenant Bewley may attempt to establish a *prima facie* case of race discrimination. In a failure to promote case, he must show that: (1) he is a member of a protected group; (2) he was qualified and applied for a position for which the employer was seeking applicants; (3) he was not promoted; and (4) similarly situated employees not part of the protected group were promoted instead. *Austin v. Minnesota Mining and Mfg. Co.*, 193 F.3d 992 (8th Cir. 1999); and *Lyoch v. Anheuser-Busch Co.*, 139 F.3d 612, 614 (8th Cir. 1998). After a plaintiff makes a *prima facie* case, the employer must produce evidence that it had a legitimate, nondiscriminatory reason for its actions. If the employer meets this burden of production, the burden shifts to the plaintiff to show that the employer's actions were a pretext for discrimination. *Id.* at 614. The plaintiff at all times has the burden of proving intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Lieutenant Bewley has an additional burden since he is alleging reverse discrimination. In *Duffy v. Wolle*, 124 F.3d 1026, 1036 (8th Cir. 1997), the court discussed this burden.[2]

> In reverse discrimination cases, several courts have held that, to present a *prima facie* case, a plaintiff must show 'that background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority.' *Murray v.*

---

[2] This case involved a "Bivens" action, which the Court noted is almost identical to an action under § 1983 except that the former is maintained against federal officials while the latter is against state officials. 123 F.3d at 1037.

*Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quotations and citations omitted); *see also Bishopp v. District of Columbia*, 788 F.2d 781, 786 (D. C. Cir. 1986) ('a plaintiff's minority status by itself is sufficient in light of historical practice in the workplace toward such socially disfavored groups to give rise to an inference of discriminatory motivation. *White males, who as a group historically have not been hindered in the workplace because of their race or sex, are required to offer other particularized evidence, apart from their race and sex, that suggests some reason why an employer might discriminate against them.*' (quotations, citations, and alterations omitted)). However, '[j]ust because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell-Douglas* presumption does not inexorably mean that his employer has not intentionally discriminated against *him*. . . . An employee who is the victim of intentional discrimination in such circumstances, and who adduces sufficient evidence of that discrimination, should be permitted to proceed beyond the *prima facie* case stage of litigation.' *Notari v. Denver Water Department*, 971 F.2d 585, 590 (10th Cir. 1992) (second emphasis added).

The court concluded in *Duffy* that the plaintiff (who alleged reverse gender discrimination) had made a *prima facie* case of reverse discrimination by alleging *three* background circumstances to support the suspicion that the employer was the unusual one who discriminates against the majority. The Court found those background circumstances to be that (1) the person selected for promotion was *substantially* less qualified than plaintiff, (2) the employer mentioned an interest by someone in the administrative office concerning the recruitment of a female for the position and (3) two members of the employer panel had usually hired female law clerks. Thus, the Court allowed the plaintiff to proceed.

Lieutenant Bewley cannot establish even a *prima facie* case of discrimination. Assuming, arguendo, that he could, he certainly cannot establish additional background circumstances to show that the City is the unusual employer who discriminates against the majority. In this case, Plaintiff has defined the term "at all times pertinent hereto" as the time Chief Johnson has served as the Chief

| 1995 LRPD Lieutenant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Hall, John | W/M | 03-20-95 |
| 2 | Cook, Mary | W/F | 03-20-95 |
| 3 | Thomas, C. P., Jr. | W/M | 08-21-95 |

| 1995 LRPD Captain Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Sylvester, Mike | W/M | 07-20-96 |
| 2 | Smith, Patrice | B/F | 07-20-96 |

| 1995 LRPD Sergeant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Walker, Randal | W/M | 03-23-96 |
| 2 | Shelton, Gary | W/M | 07-20-96 |
| 3 | Welter, Timothy | W/M | 07-20-96 |
| 4T | Durham, Kenneth | W/M | 07-20-96 |
| 4T | Frederick, Jennifer | W/F | 07-20-96 |
| 6 | Watson, Dwain | W/M | 07-20-96 |
| 7 | Gilbert, Johnny | B/M | 07-20-96 |

| 1996 LRPD Lieutenant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Higgins, Eric | B/M | 07-20-96 |
| 2 | Forester, Lyn | W/M | 07-20-96 |

| 1996 LRPD Sergeant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Westbrook, Marvin Scott | W/M | 07-26-97 |
| 2 | Myles, Lonnie | B/M | 07-26-97 |
| 3 | Norman, Jeffrey | W/M | 07-26-97 |
| 4 | Oberle, Leo Joseph | W/M | 07-26-97 |
| 5 | Vint, Jimmy Todd | W/M | 07-26-97 |
| 6 | Finks, Hayward | B/M | 07-26-97 |
| 7 | Robertson, Dustin | W/M | 07-26-97 |
| 8 | Jordan, Tony | B/M | 07-26-97 |
| 9 | Grogan, Calvin | W/M | 07-26-97 |
| 10 | Hamby, Kenneth | W/M | 07-26-97 |
| 11 | Fuller, Odistene | B/F | 07-26-97 |

There were no vacancies for LRPD Captains in 1996, therefore the list expired without promotions being made.

| 1997 LRPD Lieutenant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Smith, Richard | W/M | 07-26-97 |
| 2 | Ebinger, David | W/M | 07-26-97 |
| 3 | Corbin, Carlos | B/M | 07-26-97 |
| 4 | Dawson, Alfred | W/M | 07-26-97 |
| 5 | Winn, Larry | W/M | 01-31-98 |
| 6 | Hudson, David | W/M | 01-31-98 |
| 7 | King, Glenn | B/M | 07-26-97 |

| 1997 LRPD Sergeant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Fulk, Alice | W/F | 01-31-98 |
| 2T | Blair, James David | W/M | 01-31-98 |
| 2T | Calhoun, Timothy S. | W/M | 01-31-98 |
| 4 | Garrard, Jill | W/F | 02-02-98 |
| 5 | Owens, Michael L. | W/M | 7-18-98 |
| 6 | Henderson, Michael N. | W/M | 11-07-98 |
| 7 | Bakalekos, Mike, Jr. | W/M | 11-07-98 |
| 8 | Woodall, Frederick S. | W/M | (eligible, but not promoted) |
| 9 | Lewis, Rodney | B/M | (eligible, but not promoted) |

| 1998 LRPD Lieutenant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Bewley, Charles W. | W/M | 11-07-98 |
| 2 | Gilbert, Johnny | B/M | 11-07-98 |

| 1999 LRPD Sergeant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Temple, Kenneth B. | W/M | 07-24-99 |
| 2 | Paxton, Marcus P. | W/M | 01-24-00 |
| 3 | Tyrell, Ty N. | W/M | 01-24-00 |

| 2000 LRPD Lieutenant Promotions | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Calhoun, Timothy | W/M | 08-16-00 |

| 2000 LRPD Captain Promotions[4] | | | |
|---|---|---|---|
| Rank | Name | Race/Sex | Date of Promotion |
| 1 | Ebinger, David G. | W/M | 08-16-00 |
| 2 | Bewley, Charles W. | W/M | (eligible, but not yet promoted) |
| 3 | Corbin, Carlos | B/M | 08-16-00 |

The body of evidence available to the Court clearly indicates that there is no genuine dispute as to any material fact regarding Lieutenant Bewley's equal protection claim. Chief Johnson stated in his affidavit his reasons for promoting Captain Corbin rather than Lieutenant Bewley. He reviewed the certified list, and obtained information from the personnel files of the top three candidates. From this he determined that Lieutenants Ebinger and Corbin had served as lieutenants approximately 16 months longer than Lieutenant Bewley. He also considered the divisions where the captain's vacancies existed, and the prior experience possessed by Ebinger and Corbin. After considering all this information, and consulting with Mr. Flegal to ensure that he was in compliance with civil service rules, the Chief made his decision. Chief Johnson also testified that he did not consider race in his decision to promote Ebinger and Corbin. Thus, there is simply no direct evidence of racial discrimination in Chief Johnson's promotion decision.

Nor is there any evidence of a custom, policy or practice of the City to discriminate against white employees in regard to promotions in the LRPD. The promotions made from the certified lists from 1995 to date in no way evidence intentional discrimination against white people. In addition, the LRPD workforce statistics contained in the affidavit of Jim Foster, attached as Exhibit 3 to Defendants' Motion for Summary Judgment, demonstrate that white officers have not been the

---

[4] This list was certified on August 10, 2000, and is effective for one year from that date.

victim of discrimination in promotions to positions in the upper ranks of the LRPD. Certainly, the standard set by the Eighth Circuit to establish a widespread pattern of unconstitutional conduct is not present. Even when all material facts are viewed most favorably to Lieutenant Bewley, there is no issue that merits a trial, or any further proceedings in this case. The Complaint should be dismissed with prejudice.

### 2. Claims Against Lawrence Johnson in his Individual Capacity.

The Plaintiff has also sued Chief Johnson in his individual capacity and seeks punitive damages against him. Chief Johnson is entitled to summary judgment on his defense of qualified immunity. Qualified immunity shields a defendant from suit if he could have reasonably believed his conduct to be lawful, "in light of clearly established law and the information [that the defendant] possessed." *Hudson v. Norris, et al.*, No. 99-4180, slip. op. at 3 (8th Cir. Sept. 6, 2000) (quoting *Anderson v. Creighton*, 483 U. S. 635, 641 (1987).) Qualified immunity is an immunity from suit rather than a mere defense to liability and, therefore, its availability ordinarily should be decided by the court long before trial. *Hunter v. Bryant*, 502 U. S. 224, 227-228 (1991). The qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Id.* at 229.

To deny Chief Johnson's Motion for Summary Judgment on the defense of qualified immunity, the Court must make two findings. First, the Court must find that the record, when viewed in the light most favorable to Lieutenant Bewley, would allow a reasonable fact finder to conclude that Chief Johnson engaged in a course of conduct that violated Lieutenant Bewley's clearly established constitutional rights. *Hudson v. Norris*; and *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). Second, the Court must find as a matter of law that no reasonable official

in Chief Johnson's position could have thought such a course of conduct was lawful. *Hudson v. Norris*; and *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000).

## CONCLUSION

Clearly, Lieutenant Bewley has a right to the equal protection of the law. But, the undisputed facts outlined in the discussion above demonstrate that there is no direct or circumstantial evidence of intentional racial discrimination. There is also no basis to find that a reasonable official in Chief Johnson's position would have thought his actions violated Lieutenant Bewley's constitutional rights. Chief Johnson consulted with the Human Resources Director to determine the parameters of the Arkansas civil service law pertaining to the "rule of three," and made a selection based upon the authority of that rule. There is no evidence whatsoever that racial animus played a role in Chief Johnson's decision to promote Captain Corbin rather than Lieutenant Bewley.

Defendants respectfully submit that summary judgment is proper in all respects, and request that the Court enter an Order dismissing the Complaint with prejudice.

Respectfully submitted,

Thomas M. Carpenter
City Attorney

By: *William C. Mann, III*
William C. Mann, III, #79199
Chief Deputy City Attorney
City Hall - Suite 310
500 West Markham
Little Rock, Arkansas 72201
(501) 371-4527

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon Vicki Fewell, 2311 Biscayne, Suite 300, Little Rock, Arkansas 72227-9880, and Edward G. Adcock, 1018 Cumberland, Suite 11, Little Rock, Arkansas 72201, by placing same in the U. S. Mail, postage prepaid, on this 6th day of October, 2000.

*William C. Mann, III*
William C. Mann, III